We're going to move now to our sixth and final case of the day, case number 19-2582, Apke v. Saul, and I'm going to first recognize, we will first recognize, Mr. Sutterfield. Your Honors, are you able to hear me? Yes, sir. Thank you. May it please the Court, just as a general framework, Ms. Apke is classified as a younger individual, and for her to be successful in her claim, she has to demonstrate her inability to perform sedentary work on a sustained basis. The Commissioner has defined that as eight hours a day, five days a week, week in and week out. This case turns largely on the opinion evidence in the case. In particular, a plaintiff has submitted three medical opinions that went to the heart of Ms. Apke's fibromyalgia. Dr. Allow is also involved in some other medical issues involving her, and the Commissioner, in response, the ALJ, has sought the opinion of a medical expert post-hearing by way of interrogatory, and that was submitted. And the case is largely about the balancing of those opinions. It's the position of Ms. Apke that the ALJ's approach on this is completely flawed and requires remand. As an initial matter, he doesn't discuss the medical evidence pertaining to her fibromyalgia. He simply makes a very bland statement about her fibromyalgia, stating, quote, the claimant has been diagnosed with and treated for fibromyalgia. And he stops there. He goes on to multiple trigger points, which is a different impairment, but even if we include that, that is it. Just a one simple statement, no discussion of any of the five appointments with the rheumatologist that was treating her over the course of three full years, and no discussion of the treatments of the neurologist, Dr. Allow, who was also treating her for this condition, prescribing medication. That raises a mystery as to why he would even get a medical expert to begin with, but then that becomes compounded when the medical expert herself does not discuss the evidence. She simply, in the course of evaluating whether or not the claimant has a MESA listing, lists the impairments that she considered and simply identifies fibromyalgia, and does so identifying the exhibit at the pain clinic where a host of diagnoses are listed, fibromyalgia among them, but also tobacco abuse. There's no indication at all that she's read anything else, even read that exhibit per se, because, again, it's simply the word fibromyalgia, and referencing the page number that she identified that in the record, no reference whatsoever to the treating rheumatologist's records. No reference whatsoever to the treating records of the neurologist who's also treating for the fibromyalgia. Under no circumstances could the opinion of the medical expert be considered to be substantial evidence, much less evidence that would merit the ALJ rejecting the opinions of the treating doctors. The ALJ's characterization of the opinions of the treating doctors is also flawed from the standpoint that, you know, he indicates that the opinions are rubber-stamped. Well, they're not. They do have choices in terms of how they answer the questions, and the symptoms and limitations that this abbey alleged she had were not credible. They did not do that. And that would be consistent with the medications that she was receiving, including some powerful narcotic medications from the pain clinic. The other aspect of this that is where the ALJ said that the medical expert cited medical evidence. Again, she did not, despite the fact that she was provided a form that specifically directed her to do so. We have kind of a two-barrel shotgun here in terms of both the ALJ and the medical expert who retained pulling the trigger, and you get the little sign that comes out that says, bang. But there's no substance. There's absolutely nothing there. The medical opinions by her treaters are sufficient for the award of benefits. They're consistent with the medical opinion. I'm sorry, the vocational expert's opinion. The vocational expert testified when she passed by the ALJ, testified that an individual could not miss more than seven to eight workdays a month, if I recall correctly. I'm sorry about that. I know it's not exact. But it wasn't even a full year that they could miss, you know, one workday every month. And the opinions that were obtained from the treating doctors of Ms. Apte go to that issue. Claimant's counsel at hearing also raised the issue about being off-task behavior, and again, the opinions of the three treating physicians of Ms. Apte go to that issue. So they're not flawed. Those are important matters that the commissioner considers because RFC, or substantial gainful activity, is considered to be eight hours a day, five days a week. Well, if an individual's going to be lying down, the vocational expert said there's not going to be work. If they're going to be missing work to the extent that's identified by each of the retreating doctors, she's not eligible for work. Finally, turning to the ALJ's assessment of her credibility, again, I don't know how you assess someone's credibility without evaluating it against the medical evidence. I don't know how that includes discussion of her medications, which were changed in response to her non-positive response to what they were treating her pain with. Again, you have that issue. Then you have the fact that when you look at the items that he cited, they're not consequential, and they are not representative of an ability to perform substantial gainful activity at any exertional level, certainly not at the light work identified by the ALJ, and certainly not at the sedentary exertional level consistent with the opinion evidence submitted by plaintiffs. I have nothing further to add. I'll reserve it for rebuttal, Your Honors. Thank you, Mr. Sutterfield. Mr. Sutterfield, on rebuttal, you will have three minutes. Thank you. We'll now move on behalf of the appellee to Ms. Schwartz. May it please the Court, I'm Allison Schwartz, and I represent the Commissioner of Social Security. I just want to confirm that you can hear me. Yes, ma'am. Okay. The Court should affirm the ALJ's decision because its case law overwhelmingly supports it. This Court has held on several occasions that ALJs may rely on a medical expert's testimony when assessing a claimant's functional capabilities and what they can and cannot do in the workplace. In fact, this Court recently held in Gebauer v. Saul, which is persuasive authority here, that it is especially prudent to obtain medical experts in fibromyalgia cases because a claimant has subjective and fluctuating symptoms. Acknowledging the difficulty in evaluating Ms. Apke's particular fibromyalgia-related limitations, the ALJ retained a medical expert, Dr. Ann Winkler. She's a board-certified rheumatologist with 30 years' experience treating patients and an expert on fibromyalgia. Dr. Winkler reviewed the record and opined that Ms. Apke could perform a range of light work. Ms. Apke is incorrect that Dr. Winkler did not discuss the evidence, and Dr. Winkler affirmed in her opinion that she reviewed the record. As the manner of law is set forth in this circuit, Dr. Winkler's opinion is substantial evidence upon which an ALJ may rely. I want to point out that Dr. Winkler provided her expert testimony in the form of written interrogatories. The ALJ offered Ms. Apke the ability to attend a supplemental hearing where she could question Dr. Winkler or to proffer written interrogatories for Dr. Winkler to answer to explain her medical opinion, and Ms. Apke declined both of those offers. The ALJ reasonably relied on Dr. Winkler's expert opinion over the opinion of Ms. Apke's treating physicians. Ms. Apke's doctors and the forms that they filled out did not provide any opinions on Ms. Apke's functional limitations. Instead, they were simply asked to assume that Ms. Apke could perform a range of sedentary work and that she had limitations from her pain. And then the doctors were just asked to check a box saying whether or not they believed her. Given that, the ALJ was reasonable to use a word like rubber stamp. That type of opinion was not helpful or persuasive to the ALJ, and that's precisely why he retained Dr. Winkler as a medical expert to help evaluate the record. Turning to the ALJ's evaluation of Ms. Apke's symptoms, the ALJ found that while Ms. Apke's fibromyalgia caused limitations, they were not disabling. To support that, the ALJ did consider the medical record and noted that it did not contain abnormalities typically associated with disabling pain, such as limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities. That is a proper inquiry under the regulations at Section 404.15.29, as well as under Social Security Ruling 16.3.P. Both of those instruct ALJs to look for the presence of such abnormalities when evaluating a claimant's symptoms. Particularly in the context of fibromyalgia, objective evidence is helpful because if a claimant has disabling fibromyalgia pain, it would reasonably manifest itself in some sort of objective findings, such as gait issues, atrophy, reflex problems, range of motion limitations. None of that happens here. The ALJ, in addition to the objective evidence, looked at Ms. Apke's activities. While they were not enough on their own to show that Ms. Apke could perform light work, the ALJ was reasonable to acknowledge that she worked at her dad's business part-time, that she ran a small part-time baking business, that she cared for her three children, and that she handled housework. Ms. Apke mentions that the ALJ did not say more about the type of medication she took. Without assuming for the sake of the argument that that's true, any error in the ALJ's articulation is harmless because the ALJ retained a board-certified rheumatologist as a medical expert who reviewed the record in its entirety and is familiar with the course of treatment and types of medications one would take to treat their fibromyalgia. If this case were remanded on articulation grounds, the result would be the same. The ALJ would be relying on Dr. Winkler's medical expertise. Consequently, Ms. Apke has not shown that she was prejudiced by any of the ALJ's articulation errors to the extent there were any. Finally, the court should affirm the ALJ's consideration of Ms. Apke's mental impairments. Notably, Ms. Apke did not mention this issue in her reply brief, but I'm just going to quickly address it. The ALJ's assessment of what Ms. Apke could or could not do in the workplace mentally was consistent with state agency psychologist Dr. Snyder's opinion that Ms. Apke could handle simple work with little change in routine. The ALJ did not need to include, as Ms. Apke suggests, a functional limitation speaking to the state agency psychologist's checkbox findings that Ms. Apke had moderate limitations in certain broad functional areas. Dr. Snyder, the state agency psychologist, translated his moderate limitations into a narrative functional capacity assessment. The court has recently held several times that it will not remand a case when a state agency psychologist's checkbox findings are consistent with their translated narrative opinion. And that happened here. And if the court has no questions, the commissioner will just close this argument and state that the court should affirm the ALJ's well-reasoned decision that relies on the expertise of a fibromyalgia medical expert. Thank you. Ms. Schwartz, one brief question. You mentioned the DeBauer case early in your argument. Could you spell that and do you have a citation to it? Yes, I can. It's G-E-B-A-U-E-R, and the citation is 801 Federal Appendix 404. And that came out in 2020. Thank you, Ms. Schwartz. We're now, Mr. Sutterfield, going to move back to you. You've got three minutes on rebuttal. Thank you. Again, I don't see how anyone can begin to characterize what Dr. Winkler did as substantial evidence. She was hired to review rheumatological records. There's no indication she did that. When she made a reference to the list of impairments that she considered, she went to the records of pain management who was treating her for her trigger point. So, I mean, there's no indication that that's substantial evidence. The rest of what she put was check boxes, and I just find it remarkable that it's okay for Dr. Winkler to check boxes, but it's not okay for plaintiff's doctors who clearly would have reviewed records or the ones who authored them and have actually seen Ms. Gebauer. That's worthless. That is irrational. The Gebauer case is really interesting. It's the same expert. She's a frequent flyer with the Peorio office. Two months after her alleged onset, Ms. Gebauer underwent a treadmill test, and she had her mets were, I forget the exact number, but they were whatever, and Dr. Winkler in that case said, oh, that's consistent with performing light work. Of course, we have another two and a half years that went by, and she ended up dying from a sudden heart attack, and we ignored any number of facts in that case. But in that case, and I encourage you to read her, that was the cross-examination that I did of her in that case, because she acknowledged she has never, ever in 26 years, found an individual incapable of performing sedentary work if their diagnosis was fibromyalgia. Again, it's a non-precedential case. I'm not really happy that counsel is citing it, but to the extent they have, I think it merits reading by your honors. Let me go real quick here. There's, again, there's, I'm sorry about that. Oh, on a supplemental hearing, it would be kind of pointless. If someone submitted what Dr. Winkler did, why would you conduct a supplemental hearing? That, again, I could have handed that to somebody on the street and could have got the same results. There's just, that is not substantial evidence. Why would a claimant's representative say, oh, I'm going to spend a lot of time examining somebody who has absolutely no explanation as to any of the findings that she set forth here, even though she has no prior contact, never seen this patient, never done anything with her? Anything else? Oh, again, another red herring, it keeps sticking in their arguments before this court that there has to be gait problems, atrophy, reflux issues, range of motion issues with fibromyalgia in order for it to be severe. That is not what their own SSR says. SSR 12-2P, and again, for them to assert, they've never come forward with any medical articles that say that. Their own regulation doesn't say it. It's completely contrary to the criteria of the disease. And I find it really, in all honesty, shameful that they keep citing that because it's completely improper in light of the disease. Thank you, Mr. Sutterfield. That does complete your time. Mr. Sutterfield, one question. The reference you made to the cross-examination of Dr. Winkler of not finding anybody in that circumstance, that was in the Gebauer case, is that correct? It was. I was the attorney cross-examiner. Okay, thank you. Thank you, Mr. Sutterfield, and thank you, Ms. Schwartz. The court will take the case under advisement. Thank you. And that will close the court's hearings for this morning, and I think we'll reconvene in about 10 minutes. Very good. We're sorry. Your conference is ending now. Please hang up.